*1195 PRYOR, Circuit Judge:
This appeal requires us to decide whether an employee welfare benefit plan may recover medical costs it spent on behalf of a beneficiary after she and her attorney conspired to hide and disburse settlement funds she received after a car accident. Brenda Elem participated, as an employee of AirTran, in a self-funded employee welfare benefit plan. After Elem suffered injuries in a car accident and the plan paid over $100,000 for her medical care, Elem sued the other driver and settled for $500,000. AirTran sought reimbursement from Elem, but Elem’s attorney, Mark Link, misrepresented that Elem had settled for only $25,000. Link’s sin then found him out, see Numbers 32:23, when he accidentally sent the plan a copy of a settlement check for $475,000. After Air-Tran sued Elem, Link, and Link & Smith, P.C., for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3), the district court granted summary judgment and awarded attorney’s fees and costs in favor of Air-Tran.
Elem, Link, and the law firm challenge three orders. They contest the summary judgment on the ground that AirTran failed to satisfy the strict tracing rales of equitable restitution, but these rales do not apply to the equitable lien by agreement that the AirTran plan created. See Sereboff v. Mid Atlantic Med. Serv., Inc., 547 U.S. 356, 364-65, 126 S.Ct. 1869, 1875, 164 L.Ed.2d 612 (2006). Elem and Link argue that the district court abused its discretion when it awarded AirTran attorney’s fees and costs, but the district court had the authority to sanction them for their bad faith. Elem and Link also complain that the district court misapplied Federal Rule of Civil Procedure 70 when the court ordered enforcement of the judgment, but that issue became moot when Link and his law firm complied with the order. We affirm the summary judgment and award of fees and costs and dismiss as moot the appeal of the order to enforce the judgment.
I. BACKGROUND
In 2007, Brenda Elem sustained injuries in a car accident. Her employer, AirTran, paid $131,704.28 for her medical care as a result of her participation in its self-funded employee welfare benefit plan. The plan designated Elem as a constructive trustee over any payments recovered from third parties and created an equitable lien for the amount of benefits paid by the plan. Under the plan, when Elem accepted her medical benefits from AirTran, she acknowledged that AirTran had a first priority claim to all payments made by a third party, even if that third party failed to pay the full amount of her damages. Months after the accident, the plan administrator advised Elem that, if she sued the driver of the other vehicle, Migel Rizo, the terms of the plan required Elem to reimburse AirTran with proceeds from that suit. And the plan administrator also advised Rizo’s insurer, AIG, of that right to reimbursement.
In September 2007, when Elem contacted AIG to settle the claim against Rizo within his liability policy limits of $25,000, she misrepresented that the plan would have no lien against any funds she would recover from AIG. [Id.] She also stated that she intended to sue Rizo for the full amount of her damages if AIG refused to pay the $25,000. AIG responded that Rizo’s policy limit was $25,000 and that it would be willing to issue a settlement check for that amount to Elem if her plan “waive[d] their subrogation lien” or to Elem and the plan if the plan did not waive the lien.
*1196 Elem hired Mark Link of Link & Smith, P.C., as her attorney and sued Rizo for the injuries she sustained in the accident. AIG advised Link that it had offered $25,000 to Elem, but that AIG had notice of a lien and a duty to protect its insured. In December 2007, the plan administrator for AirTran notified Link of the lien in favor of AirTran.
Rizo and Elem later settled their lawsuit for $500,000. During the negotiation of their settlement agreement, Link asked AIG to prepare two releases: one reflecting payment of the policy limit of $25,000 and another for $475,000 in settlement of Rizo’s claim of bad faith. Link also requested two separate checks and demanded that the $25,000 release not mention Rizo’s release of his claim of bad faith. AIG responded that “it seems deceptive” to omit Rizo’s release of his claim, but Link got his way.
Elem executed a release in favor of AIG for $25,000 and another release for $475,000 signed also by Rizo. AIG issued two separate settlement checks to Elem, Link, and Link & Smith, one for $25,000 and another for $475,000. Elem later received $274,184.08; Link & Smith retained $190,000.00 for attorney’s fees and $10,815.92 for expenses; and Link & Smith kept the remaining funds of $4,500.00 in an escrow account.
When Link informed the plan administrator about the settlement, he stated that Elem had settled her claim against Rizo for the policy limit of $25,000 and “has abandoned any hope of recovering” more than that amount. Although Link intended to enclose a copy of the $25,000 check as proof of that settlement, he inadvertently enclosed a copy of the $475,000 check. The plan administrator noticed the error and demanded reimbursement from “[a]ll [settlements and ^judgments.”
When Elem refused to reimburse the plan, AirTran filed suit against Elem, Link, and Link & Smith. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of AirTran. The court then awarded AirTran attorney’s fees in the amount of $145,723.28 and costs in the amount of $3,692.52.
When Link still refused to pay, AirTran filed a motion to enforce the judgment under Federal Rule of Civil Procedure 70. Elem and Link responded that Rule 70 was inapplicable because the judgment against them was for money damages enforceable only through a writ of execution. The district court granted the motion and ordered Elem and Link to satisfy the full amount of the judgment or post a bond. AirTran later moved to hold Elem and Link in contempt when they refused to comply with the order, but AirTran withdrew the motion when Link and Link & Smith eventually paid the full amount of the judgment and attorney’s fees and costs. At oral argument, the parties stipulated that Link and his firm conditioned this payment on the disposition of the appeal of the summary judgment and the award of attorney’s fees and costs.
II. STANDARDS OF REVIEW
Two standards of review govern us. First, we review de novo a summary judgment and draw all inferences and review all evidence in the light most favorable to the nonmoving party. Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir.2012). Summary judgment should be granted only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Id. We also review the mootness of an appeal de novo. Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga., 451 F.3d 777, *1197 784 (11th Cir.2006). Second, we review for abuse of discretion an award of attorney’s fees and costs. Byars v. Coca-Cola Co., 517 F.3d 1256, 1263 (11th Cir.2008).
III. DISCUSSION
Elem and Link contest the summary judgment in favor of AirTran, the award of fees and costs, and the issuance of the Rule 70 order to enforce the judgment, but their arguments fail. We discuss each order of the district court in turn.

A. The District Court Correctly Granted Summary Judgment in Favor of AirTran.

We divide this section in two parts. We first discuss Elem and Link’s challenge to the summary judgment in favor of AirTran on the ground that AirTran failed to seek equitable relief. We second discuss Elem and Link’s attempts to avoid liability based on four technicalities, none of which justify the breach of their fiduciary duty.
1. AirTran seeks appropriate equitable redress.
The Act permits AirTran to file a civil action “to obtain ... appropriate equitable relief ... to redress” the misdeeds of Elem, Link, and Link & Smith. 29 U.S.C. § 1132(a)(3)(B). “[Appropriate equitable relief’ includes only “those categories of relief that were typically available in equity,” Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002). Elem and Link argue that AirTran cannot recover Elem’s medical costs because AirTran seeks money damages, a legal remedy, but AirTran contends that the plan created an equitable lien by agreement over the settlement funds. AirTran argues that it seeks to recover “specifically identifiable funds” in “the possession and control” of Elem and Link, that the plan created an equitable lien by agreement, and that its claim, therefore, falls within “appropriate equitable relief’ allowed under the Act. Sereboff, 547 U.S. at 362-63, 126 S.Ct. at 1874 (internal quotation marks omitted).
This case sounds in equity. When AirTran filed suit against Elem and Link, it did so to enforce the equitable lien by agreement created by the plan. In “the days of the divided bench,” this suit would have been equitable in nature. See id. at 363-65, 126 S.Ct. at 1874-76. Like the plan in Serebojf, the unambiguous terms of the AirTran plan created an equitable lien against any settlement funds that Elem received as a result of her accident. As soon as AIG gave Elem the settlement funds, AirTran “could follow it into the hands of [Elem and Link].” Barnes v. Alexander, 232 U.S. 117, 123, 34 S.Ct. 276, 278, 58 L.Ed. 530 (1914).
We must also ensure that the nature of the remedy AirTran seeks is equitable. Compare Sereboff, 547 U.S. at 361-63, 126 S.Ct. at 1873-74, with Knudson, 534 U.S. at 212-14, 122 S.Ct. at 714-15. Elem and Link are correct that the remedy of money damages is quintessentially a remedy at law. For that reason, a plan may not file suit against a beneficiary for reimbursement and seek recovery from “assets generally” of that beneficiary, because that suit would seek legal, not equitable, restitution. Sereboff, 547 U.S. at 363, 126 S.Ct. at 1874 (distinguishing Knudson). But when a plan seeks “specifically identifiable funds” in “the possession and control” of a beneficiary, such restitution of the funds is equitable in nature. Id. at 362-63, 126 S.Ct. at 1874 (internal quotation marks omitted).
AirTran seeks an equitable remedy. AirTran filed suit to enforce its equitable lien over “specifically identifiable funds” that Elem had in her “possession.” See *1198 Sereboff, 547 U.S. at 362-63, 126 S.Ct. at 1874 (internal quotation marks omitted). According to the plain terms of the plan, the settlement that AIG paid to Elem constitutes the specifically identifiable funds over which AirTran had a lien. Elem and Link attempt to liken those settlement funds to the funds in Knudson, but, unlike the beneficiary in Knudson, Elem possessed the funds. Id. (distinguishing Knudson on the ground that the beneficiary never possessed the settlement fund); see also Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 664 (2d Cir.2013) (“[A]ll that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer.”). Once she possessed those funds, the equitable lien by agreement attached to them, making them “specifically identifiable.” Sereboff, 547 U.S. at 362-63, 126 S.Ct. at 1874.
We disagree with our dissenting colleague, who adopts the position of the Ninth Circuit and concludes that AirTran cannot collect what it is owed because it has not traced the settlement funds after Elem divided them with her attorney. (Dissenting Op. at 1206-07). See Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083, 1095 (9th Cir.2012) (“Nothing in Serebojf suggests that a fiduciary can enforce an equitable lien against a beneficiary’s general assets when specifically identified funds are no longer in a beneficiary’s possession.”). It matters not whether the settlement funds have since been disbursed or commingled with other funds. In Serebojf, the Supreme Court made clear that AirTran need not trace the settlement fund back to AirTran to enforce its equitable lien by agreement. Id. at 364-65, 126 S.Ct. at 1875-76. As soon as the settlement fund was identified, the plan imposed an equitable lien over that fund even though it was in the hands of the beneficiaries. Id. at 363-64, 126 S.Ct. at 1875. And in the wake of Serebojf, our sister circuits have concluded that “[property to which the lien attached may be converted into other property without affecting the efficacy of the lien.” Funk v. CIGNA Grp. Ins., 648 F.3d 182, 194 (3d Cir.2011); see Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis, 745 F.3d 283, 285 (7th Cir.2014) (“The defendants argued ... that because the settlement funds have been dissipated, this really is a suit for damages.... But the defendants are wrong.”); Thurber, 712 F.3d at 663-64 (“[T]he beneficiary’s literal segregation of funds is irrelevant when the terms of the ... plan put the beneficiary on notice that she would be required to reimburse the insurer for an amount equal to what she might get from third-party sources.” (alterations and internal quotation marks omitted)); Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 231 (1st Cir.2010); Longaberger Co. v. Kolt, 586 F.3d 459, 466-67 (6th Cir.2009); see also Popowski v. Parrott, 461 F.3d 1367, 1374 n. 8 (11th Cir.2006) (“[T]he fact that the third-party recovery triggering the [p]lan’s reimbursement provision was comingled, even absent tracing, would not have disqualified an equitable lien had that equitable lien been by agreement. ...”). We join those circuit courts and conclude that, even though Elem willfully refused to abide by the terms of the AirTran plan, her dereliction as a constructive trustee could not destroy the lien that attached before Elem divided the funds with her attorney. See Barnes, 232 U.S. at 122, 34 S.Ct. at 278 (explaining that the lien often attaches before the specific funds exist). Elem and Link argue that AirTran may take only the remaining $4,500 of settlement funds left in the escrow account, but they misunderstand that the plan imposed a lien for the entire $131,704.28 of medical benefits paid, which *1199 attached when Elem obtained the settlement funds. Contrary to Elem and Link’s argument, these “specifically identifiable funds” did not disappear when they divided the money.
By the terms of the plan, AirTran paid for Elem’s medical care and, as a result, could enforce it the moment Elem possessed the settlement checks from AIG. Even though Elem and Link distributed the funds, the res remained the same: the amount of the medical benefits paid to Elem. See Barnes, 232 U.S. at 122, 34 S.Ct. at 278. Elem and Link cannot defeat the first priority lien of AirTran, and Elem cannot abandon her duties as trustee under the constructive trust by commingling the res with other funds. See Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 621 (7th Cir.2008) (“[The insurer] may bring its counterclaim [for reimbursement] even if the benefits it paid Gutta are not specifically traceable to Gutta’s current assets because of commingling or dissipation.”). Their dishonesty and manipulation of the settlement funds cannot destroy the lien of AirTran over the “specifically identifiable” monies.
2. Elem and Link’s remaining arguments about the summary judgment are meritless.
Elem and Link raise four additional arguments, none of which we find persuasive. First, Link and Link & Smith argue that AirTran cannot recover from them as third-party attorneys. Second, Elem and Link argue that, when AIG funded the $475,000 portion of the settlement, AIG no longer qualified as a “responsible party” under the plan. Third, they argue that AirTran cannot force Elem to reimburse it because AirTran never disclosed to her the plan terms. Fourth, Elem seeks to avoid liability by arguing that, because the plan administrator provided healthcare services, AirTran cannot sue to enforce its right to reimbursement. We address each of these arguments in turn.
Link and Link & Smith argue that they are not proper defendants because AirTran cannot seek reimbursement from a third-party attorney, but that argument fails. A plan may recover from a nonfiduciary party in interest, even if that party has not violated a duty expressly imposed by the Act. Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245, 120 S.Ct. 2180, 2186-87, 147 L.Ed.2d 187 (2000). Because Elem breached her fiduciary duty as trustee and transferred the trust property to Link and Link & Smith, the attorneys took the property subject to the trust, unless they purchased the property for value and without notice of the fiduciary’s breach of duty. Id. at 250, 120 S.Ct. at 2189. Even if Link and Link & Smith were not the original wrongdoers, they are not insulated from liability for restitution. Id. at 251, 120 S.Ct. at 2189; see also Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 357-58 (5th Cir.2003), abrogated on other grounds, ACS Recovery Serv., Inc. v. Griffin, 723 F.3d 518 (5th Cir.2013) (en banc). And Link and Link & Smith are hardly innocent parties. Link and his firm tried to hide the full amount of the settlement agreement from AirTran. Link represented that the $25,000 would take care of any liens on the settlement asserted by AirTran, but paid himself and his firm $200,815.92. Even if they had not known of the first priority lien of AirTran, they could not defeat the lien, but the record makes clear that the plan administrator had repeatedly notified Link and Link & Smith that AirTran had an equitable lien and intended to enforce it.
*1200 Link and his firm knew that they took fees and costs subject to the lien held by AirTran, and they cannot now avoid liability by asserting that they did not agree to the terms of the plan. The lien arose before they entered into a contingency fee arrangement with Elem, and Elem agreed to the terms of the plan long ago. She agreed that “[t]he Plan is not required to participate in or pay court costs or attorney fees to any attorney hired by [Elem] to pursue [Elem]’s damage claim.” These obligations, which “precluded [Elem] from contracting away to the law firm that which [she] did not own [herself], namely, the right to all or any portion of the [sum] that rightfully belonged to the Plan,” predated her attorney-client relationship with Link and his firm. Bombardier, 354 F.3d at 357. That Link and his firm disregarded the first priority lien of AirTran and commingled the settlement funds does not defeat the claim for equitable relief by AirTran because, “under Sereboff, [Air-Tran] was free to follow a portion of the settlement funds into [Link and Link & Smith’s] hands.” Longaberger Co., 586 F.3d at 469.
Elem and Link argue too that Elem could not have wrongfully transferred the settlement funds because Elem never had “possession” of those funds. They explain that AIG transferred the funds to Link and his firm. They argue that, because Elem never possessed the funds, her duty to reimburse AirTran was never triggered.
Nonsense. Even if AIG wrote and delivered the checks to Link and his firm, Elem “had at least constructive possession and control of the fund[s] to facilitate the settlement.” Griffin, 723 F.3d at 529 (“Griffin’s attempt to divorce himself from the origin of the fund and its disposition is no more persuasive than if he had directed the money to a close relative.... [H]e could not give away that which he did not possess.”). And here, Elem likely had “actual possession” because her attorney, as her agent, received and deposited the checks.
Elem and Link also argue that Air-Tran cannot seek reimbursement because AIG is not a “responsible party” under the terms of the plan. They argue that, when AIG paid the $475,000 check, AIG no longer qualified as a “responsible party” for the purposes of reimbursement because AIG was no longer providing “liability coverage” for Rizo, but this argument contravenes the plain terms of the plan.
The terms of the plan entitle AirTran to reimbursement from “any payment” from “any Responsible Party as a result of an injury, illness, or condition.” The plan defines “Responsible Party” as “any party actually, possibly, or potentially responsible for making any payment to a Covered Person due to a Covered Person’s injury, illness or condition^ which] includes the liability insurer of such party or any insurance coverage.” Because AIG settled the lawsuit for $500,000, it meets the definition of a “responsible party.” It matters not at all that Rizo’s policy limits were only $25,000 because the terms of the plan allow AirTran to recover “any payment” to Elem “due to” her injury. AirTran now may seek its “specifically identifiable” amount from the $500,000 for medical expenses paid on behalf of Elem.
Elem and Link also attempt to evade liability by arguing that AirTran cannot force Elem to reimburse AirTran because she never saw the plan documents, but Elem accepted the benefits and is bound by the terms of the plan unless AirTran prejudiced Elem by its failure to disclose them. Our Court has said that “the quantity of an employer’s procedural violations,” such as failure to abide by disclosure requirements, “may work a substantive harm.” Harris v. Pullman *1201 Standard, Inc., 809 F.2d 1495, 1499 (11th Cir.1987). But an employee must establish that she was prejudiced by an infraction committed by the plan. See Hein v. TechAmerica Grp., Inc., 17 F.3d 1278, 1280-81 (10th Cir.1994); see Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir.1991) (requiring bad faith, active concealment, or inducement to rely on a faulty plan summary by an administrator before a court will award recovery for procedural violations).
Elem has not alleged that AirTran committed a multitude of procedural violations or that she was prejudiced by any nondisclosure. Nor can she. The plan administrator repeatedly sent letters expressing its intent to pursue reimbursement. And Elem allowed AirTran to pay over $130,000 of her medical bills. Elem knew of the lien before disbursing the funds to herself and to her attorney, and she cannot avoid liability on a technicality. See Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 171-72 (2d Cir.2005) (“Where a plan administrator fails to fulfill its statutory duty ..., but where the evidence shows that the claimant had actual knowledge of the requirement at issue, the error is necessarily harmless.”).
Finally, Elem and Link argue that AirTran lacks standing to seek reimbursement of Elem’s medical costs that the plan administrator paid, but they misunderstand the nature of the self-funded employee benefit plan offered by AirTran. Under the terms of the plan, AirTran provided various benefit options to its employees and contracted with the plan administrator to provide various services, including network access, subrogation, and patient management services. In the district court, Elem relied on language in the Benefits Enrollment Guide, which refers to healthcare services provided by the plan administrator, but the provision of those administrative services does not give the plan administrator the right to seek reimbursement from Elem. Instead, AirTran still paid for all expenses incurred by its participants, including Elem. We reject Elem and Link’s argument that AirTran cannot now recover its costs because it contracted with the plan administrator.

B. The District Court Did Not Abuse Its Discretion by Awarding Attorney’s Fees and Costs to AirTran.

A district court, “in its discretion,” may award attorney’s fees to a party, 29 U.S.C. § 1132(g)(1), if that party achieved “some degree of success on the merits,” Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255, 130 S.Ct. 2149, 2158, 176 L.Ed.2d 998 (2010). We require district courts to consider five factors when deciding whether to award fees to a prevailing party:
(1) the degree of the opposing parties’ culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney’s fees; (3) whether an award of attorney’s fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney’s fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties’ positions.
Freeman v. Continental Ins. Co., 996 F.2d 1116, 1119 (11th Cir.1993). We have explained that “[n]o one of these factors is necessarily decisive, ... but together they are the nuclei of concerns that a court should address.” Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980).
*1202 Elem and Link argue that the district court unjustly awarded AirTran attorney’s fees, but the five Freeman factors support the award. First, we rarely see such a textbook example of “bad faith.” Link intentionally attempted to deceive the plan administrator when he sent the letter stating that $25,000 represented the entire settlement amount. And he coerced AIG to draft two separate releases to effectuate his deception. Fortunately for AirTran, his scheme came crashing down when he sent a copy of the $475,000 check to the plan administrator. His actions no doubt evince bad faith. Second, Link and Link & Smith have already satisfied the award, although conditionally. Third, an award of attorney’s fees in this circumstance would help deter others from cheating their employee benefit plan. Fourth, the award protects plan assets, which benefit all plan participants. And fifth, the defense mounted by AirTran was highly meritorious. The district court did not abuse its discretion when it awarded attorney’s fees to AirTran.

C. The Payment of the Award of Fees and Costs Moots Any Argument About the Entry of the Rule 70 Order by the District Court.

Elem and Link argue that the district court misinterpreted Federal Rule of Civil Procedure 70 when it ordered them to pay the full amount of the judgment and fees and costs. Rule 70 provides, “If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party’s expense—by another person appointed by the court.” Rule 70 “gives the district court a discrete and limited power to deal with parties who thwart final judgments by refusing to comply with orders to perform specific acts.” Analytical Eng’g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443, 449 (7th Cir.2005). Elem and Link contend that the district court erroneously converted a final money judgment at law into an injunction and that the judgment was enforceable only through a writ of execution.
This issue is no longer justiciable because the appeal of the order is now moot. Instead of posting a supersedeas bond, Link and his firm paid the full amount due to AirTran to avoid being held in contempt. Even if we agreed that the district court erred when it issued that order, we could not grant any meaningful relief because the defendants have already complied with it. See Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585, 587 n. 1 (11th Cir.1995); Fidelcor Mortg. Corp. v. Ins. Co. of N. Am., 820 F.2d 367, 370 (11th Cir.1987) (“When it executed the satisfaction of the judgment, it included no reservation allowing it to proceed with an appeal on some issues; it satisfied the judgment in toto. Therefore, there is nothing left from which it may appeal.”). No case or controversy about the merits of the Rule 70 order remains after the payment. See RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC, 718 F.3d 1308, 1314 (11th Cir.2013) (“Where no legally cognizable interest is at stake between the parties, a case becomes moot.... This is so no matter how vehemently the parties continue to dispute the issues that animated the litigation.” (internal quotation marks and citation omitted)).
We are befuddled by our dissenting colleague’s contrary conclusion. (Dissenting Op. at 1208-09). At oral argument, when we asked counsel for Elem, Link, and Link & Smith what injury they now suffered as a result of the Rule 70 order even though they had paid the judgment, he answered, “Any injury now, perhaps not.” We reit *1203 erate that because Link and Link & Smith have complied with the Rule 70 order by paying the judgment, we cannot afford them any meaningful relief even if that order was in error.
IV. CONCLUSION
We AFFIRM the summary judgment and award of attorney’s fees and costs in favor of AirTran and DISMISS as moot the appeal of the order under Rule 70.