[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12157
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00268-AT

W. A. GRIFFIN, MD,

Plaintiff - Appellant,

versus

GENERAL MILLS, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 29, 2015)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Proceeding *pro se*, Dr. W.A. Griffin appeals the dismissal of her complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).  After careful consideration, we affirm.[1]

I.

Dr. Griffin, who operates a dermatology practice in Atlanta, Georgia, treated a patient insured under a General Mills, Inc. health plan (the "Plan").[2]  Dr. Griffin is an out-of-network provider for the Plan.  The insured executed an assignment that "assign[ed] and convey[ed]" to Dr. Griffin "all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from [Dr. Griffin] . . . , regardless of [Dr. Griffin's] managed care network

---

[1] Dr. Griffin's motions for (1) a three-judge panel and a published opinion and (2) expedited consideration, a three-judge panel, and a published opinion are also pending before us.  We deny her motions.  Her requests for a three-judge panel are moot because our rules provide that she is entitled to a three-judge panel.  *See* 11th Cir. R. 34-2, 34-3(e).  As regards her requests for a published opinion, our rules provide that "[a]n opinion shall be unpublished unless a majority of the panel decides to publish it."  11th Cir. R. 36-2.  In this case, the panel decided not to publish.  Our rules do permit a party to file a motion requesting that a previously unpublished order be published but provide that the motion shall be granted only if the panel unanimously agrees to publish.  11th Cir. R. 36-3.  Construing Dr. Griffin's motions as requesting publication under Rule 36-3, the request is premature, and we deny it.  Finally, we deny her request for expedited consideration as moot.

[2] At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to Dr. Griffin.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).  We also consider the Plan and Summary Plan Description, which General Mills submitted to the district court with its motion to dismiss.  Although Dr. Griffin did not attach these documents to her complaint, we may consider them because they are central to the complaint and their contents are not in dispute.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

2

participation status." Legal Assignment of Benefits (Doc. 1).[3] The assignment further stated that it was "valid for all administrative and judicial review under . . . ERISA." *Id.*

The Plan is a General Mills-sponsored, self-funded group health benefit plan governed by ERISA. General Mills serves as the plan administrator. Plan documents show that Blue Cross Blue Shield of Minnesota ("BCBSMN") is the claims and appeals administrator for the Plan. General Mills delegated to BCBSMN the day-to-day administration of medical benefits under the Plan, including the discretionary authority to determine whether a claim is payable. An anti-assignment provision in the Plan bars participants from voluntarily assigning benefits under the Plan. *See* Plan at 26 (Doc. 4-2) ("[B]enefits payable to a Covered Person under a Participating Plan . . . may not be voluntarily sold, transferred, alienated, or assigned.").

Dr. Griffin treated one patient insured under the Plan and alleges that she was required to submit claims and appeals to Blue Cross Blue Shield Georgia ("BCBSGA"), even though BCBSMN was the claims administrator. According to Dr. Griffin, BCBSMN and the other independent Blue Cross Blue Shield Companies, including BCBSGA, agreed to participate in the national "Blue Card Program." The Blue Card Program requires providers to file claims and appeals

---

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

with the Blue Cross company based where the services were provided, not with the Blue Cross company that serves as the claims administrator. Accordingly, Dr. Griffin submitted her claim for the insured to BCBSGA.

Dr. Griffin alleges that the claim was underpaid by $92. She filed with BGBSGA a level one administrative appeal regarding this claim. With her administrative appeal, Dr. Griffin requested at least ten categories of documents from BCBSGA. She also demanded that BCBSGA notify her whether the Plan contained an anti-assignment clause, warning that if it failed to do so, she would argue in litigation that the anti-assignment clause was unenforceable. BCBSGA responded and denied the appeal. Dr. Griffin then filed a level two administrative appeal with BCBSGA again requesting broad categories of documents and asking whether the Plan contained an anti-assignment clause. Neither BCBSGA nor BCBSMN responded to the level two appeal. Neither BCBSGA nor BCBSMN provided Dr. Griffin with any of the documents she requested with her appeals or disclosed that the Plan had an anti-assignment provision.

Dr. Griffin sued General Mills in federal court, bringing ERISA claims for failure to provide Plan documents and breach of contract. She sought approximately $92 for unpaid services, more than $89,000 in penalties, and declaratory relief. General Mills moved to dismiss the complaint. While the motion to dismiss was pending, Dr. Griffin sought leave to amend her complaint to

4

add an additional claim based upon co-fiduciary liability under ERISA.  The district court granted the motion to dismiss and denied the motion to amend, concluding that Dr. Griffin lacked statutory standing under ERISA based on the Plan's anti-assignment provision.  Accordingly, the district court dismissed the case without prejudice.  This appeal followed.[4]

## II.

Although courts have long applied the label of "statutory standing" to the basis for decisions such as the district court's here, that Dr. Griffin lacked standing under ERISA, the Supreme Court has cautioned that this label is "misleading" because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff "has a cause of action under the statute."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 & n.4 (2014) (internal quotation marks omitted).  Put differently, we understand the district court's decision that Dr. Griffin lacked statutory standing to be a determination that she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1273-74 (11th Cir. 2015).

---

[4] After Dr. Griffin filed her notice of appeal, General Mills filed a motion seeking $3,361.05 in attorney's fees under ERISA.  The motion remains pending before the district court and is not before us on appeal.

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[N]aked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal quotation marks omitted). Upon review of dismissals for failure to state a claim, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (internal quotation marks omitted).

### III.

Section 502(a) of ERISA provides that only plan participants and plan beneficiaries may bring a private civil action to recover benefits due under the terms of a plan, to enforce rights under a plan, or to recover penalties for a plan administrator's failure to provide documents. 29 U.S.C. § 1132(a)(1), (c). This provision also limits the right to sue for breach of fiduciary duty to plan

6

participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor. *Id.* § 1132(a)(2). Additionally, only plan participants, plan beneficiaries, and plan fiduciaries may bring a civil action to obtain equitable relief to redress a practice that violates ERISA or the terms of a plan. *Id.* § 1132(a)(3). As we have explained, "[h]ealthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1294 (11th Cir. 2004).

There is, however, an exception to this general rule that healthcare providers have no right of action under section 502(a). We have recognized that "[h]ealthcare providers may acquire derivative standing . . . by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan." *Id*; *see also Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (explaining that "neither the text of § 1132(a)(1)(B) nor any other ERISA provision forbids the assignment of health care benefits provided by an ERISA plan"). Although ERISA does not prohibit a plan participant or beneficiary from assigning benefits to her provider, we have held that an anti-assignment provision in a plan, which limits or prohibits a plan participant or beneficiary from assigning her right to payment of benefits, is valid and enforceable. *Physicians Multispecialty Grp.,* 371 F.3d at 1296. Accordingly,

7

when a plan contains an unambiguous anti-assignment provision, a plan participant

or beneficiary may not assign benefits to a healthcare provider, meaning the

healthcare provider cannot acquire a cause of action under section 502(a).  *Id.*

## A.

In this case, the insured's assignment purported to transfer to Dr. Griffin the

right to payment of benefits.  We have recognized that when a patient assigns to a

provider the right to payment for medical benefits, he also conveys the right to file

an action under section 502(a) of ERISA for unpaid benefits.  *See Conn. State*

*Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53  (11th Cir.

2009).  Thus, if enforceable, the assignment transferred to Dr. Griffin the right to

bring a cause of action under section 502(a) for unpaid benefits.[5]  Because the

Plan's anti-assignment provision bars the insured's voluntarily assignment of

benefits to Dr. Griffin, we conclude that the assignment is void.  The district court

did not err in dismissing Dr. Griffin's ERISA action for failure to state a claim

because she lacked a cause of action under section 502(a) of ERISA.

Dr. Griffin argues that the assignment is valid because the anti-assignability

provision is unenforceable under Georgia law.  She relies on a Georgia statute

stating that "whenever . . . [a] self-insured health benefit plan . . . , which is issued

---

[5] Although the assignment transferred to Dr. Griffin the insured's right to sue under section 502(a) of ERISA for unpaid benefits, the assignment contained no provision transferring the insured's right to assert claims for breach of fiduciary duty or civil penalties.  Because the insured never assigned to Dr. Griffin the right to bring such claims, she lacks derivative standing to bring these claims under section 502 of ERISA.

or administered by a person licensed under this title provides that any of its benefits are payable to a participating or preferred [licensed] provider of health care services," the plan must also "pay such benefits either directly to any similarly licensed nonparticipating or nonpreferred provider who has rendered such services, has a written assignment of benefits, and has caused written notice of such assignment to be given . . . or jointly to such nonparticipating or nonpreferred provider and to the insured."  O.C.G.A. § 33-24-54(a).  These benefit payments must be sent "directly to the provider who has the written assignment."  *Id.*  The statute guarantees that if benefits are payable to preferred or participating providers under a self-insured plan, the plan must also pay benefits to non-participating or non-preferred healthcare providers to whom patients have assigned their rights. Even assuming that section 33-24-54 applies to a Plan for which BCBSMN, not BCBSGA, is the claims administrator, nothing in the statute explicitly prohibits a health benefits plan from barring assignment.  Thus, we fail to see how section 33-24-54(a) renders an anti-assignment provision unenforceable and decline to hold that the statute implicitly bars anti-assignment provisions.[6]

---

[6] Other states have expressly prohibited anti-assignment clauses.  *See, e.g.*, Ala. Code § 27-1-19(b) ("[T]he contract providing coverage to an insured may not exclude the right of assignment of benefits . . . ."); Colo. Rev. Stat. § 10-16-317.5(a) (stating that a "contract issued pursuant to the provisions of this article shall not prohibit a subscriber under the contract from assigning, in writing, benefits under the contract to a licensed hospital or other licensed health care provider for services provided to the subscriber which are covered under the contract"); Me. Rev. Stat. Ann. tit. 24, § 2332-H ("All contracts providing benefits for medical or dental care on an expense-incurred basis must contain a provision permitting the insured to assign benefits for

B.

Dr. Griffin argues that General Mills cannot rely on the anti-assignment provision because BCBSGA failed to notify her of the provision after she asked whether the Plan contained such a term. Liberally construed, Dr. Griffin's argument is that because BCBSGA failed to disclose the anti-assignment term, General Mills either is equitably estopped from relying on the anti-assignment term or has waived it. We disagree.

Under ERISA equitable estoppel applies only when "the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Because the anti-assignment provision is unambiguous, equitable estoppel cannot apply here.

We have "left open the question of whether waiver principles might apply under the federal common law in the ERISA context." *Witt v. Metro. Life Ins. Co.*,

---

such care to the provider of the care."); N.H. Rev. Stat. Ann. § 420-B:8-n (requiring insurance contracts to "contain a provision permitting the enrollee to assign any benefits provided for medical or dental care on an expense-incurred basis to the provider of care"); Tenn. Code Ann. § 56-7-120 ("[W]henever any policy of insurance issued in this state provides for coverage of health care rendered by a provider . . . , the insured or other persons entitled to benefits under the policy shall be entitled to assign these benefits to the healthcare provider and such rights must be stated clearly in the policy."); Va. Code Ann. § 38.2-3407.13 (prohibiting insurers from "refus[in]g to accept or make reimbursement pursuant to an assignment of benefits made to a dentist or oral surgeon by an insured, subscriber or plan enrollee"). Georgia law contains no such provision.

772 F.3d 1269, 1279 (11th Cir. 2014).  But even if we assume that waiver could apply in the ERISA context, Dr. Griffin has failed to plead sufficient facts to show that General Mills waived the anti-assignment provision.  "[W]aiver is the voluntary, intentional relinquishment of a known right."  *Id.* (internal quotation marks omitted).  We have explained that waiver may be express or implied, but to find implied waiver, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case."  *Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir. 1982).

Dr. Griffin has neither alleged nor explained how General Mills intentionally relinquished its rights under the anti-assignment provision.  In fact, she alleged no interaction or communication with General Mills before she filed this lawsuit.  Although she alleged that BCBSGA failed to inform her of the anti-assignment provision during the administrative process, even liberally construing her pleadings and accepting her allegations as true, we find these allegations insufficient to establish a "clear case" that General Mills intentionally and voluntarily relinquished its rights under the anti-assignment provision.  *Id.*

## IV.

We conclude that the Dr. Griffin failed to state a claim because she failed to allege facts sufficient to support a cause of action under § 502(a) of ERISA.

11

Accordingly, the district court committed no error in dismissing her complaint against General Mills.[7]

**AFFIRMED.**

---

[7] Dr. Griffin also argues that the district court erred in denying her motion to amend her complaint to add an additional claim under ERISA.  We review the district court's denial of a motion to amend a complaint for abuse of discretion, but we review *de novo* whether the proposed amendment to the complaint would be futile.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802-03 (11th Cir. 1999).  Because of the anti-assignment provision, Dr. Griffin has no cause of action under ERISA; thus, the proposed amendment would be futile, and the district court properly denied the motion to amend.