W.A. GRIFFIN, M.D., Pro se, Plaintiff,

v.

GENERAL MILLS, INC., Defendant.

CIVIL ACTION NO. 1:15–CV–0268–AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed January 15, 2016

W. A. Griffin, MD, Atlanta, GA, pro se.

Jennifer A. Adler, Weinberg Wheeler Hudgins Gunn & Dial, LLC, Vernon Robert Denham, Jr., Robins Kaplan, LLP, Atlanta, GA, for Defendant.

## ORDER

Amy Totenberg, United States District Judge

This is a tale about what can go sadly wrong when a competent individual seeks to pursue a case *pro se* in a complex area of the law. Dr. Griffin believed she was underpaid by $92.00 for medical services administered to the beneficiary of a General Mills employee benefit plan. That plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18 (2012), notoriously labyrinthine legislation.

Dr. Griffin thought she had a valid assignment of rights and benefits from her patient. It turns out she did not, because the plan documents contain a valid anti-assignment clause. She could not have known that before filing the lawsuit, though, because no one would send her the plan documentation—despite her multiple attempts. And, based on the assignment, she thought she had the right to ask for the plan documentation, and also to seek statutory penalties against General Mills, the plan administrator, when her document requests to the claims administrator went unanswered. Dr. Griffin did not know who was who, though, because she was never given the plan documentation. As a result, she sought $92.00 in unpaid medical bills and $89,210.00 in statutory penalties against General Mills.

Dr. Griffin filed a number of other cases raising similar claims against similarly-situated corporate defendants.[1] All of the cases were based upon the same form assignment of benefits that Dr. Griffin has her patients execute as a condition of service, and all of the statutory penalties requests flowed from the same violation: failure to produce the plan documentation upon request. On March 12, 2015, this Court held in one of the other cases that Dr. Griffin was not entitled to statutory penalties because she requested the plan documentation from the wrong party (the claims administrator rather than the plan administrator). *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al.,* No. 1:14–cv–1610–AT, Doc. 26 at 6–8 (N.D. Ga. filed March 12, 2015).

---

1. *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al.,* No. 1:14–cv–1610–AT (N.D. Ga. filed May 28, 2014); *Griffin v. Southern Company Servs., Inc.,* No. 1:15–cv–0115–AT (N.D. Ga. filed Jan. 14, 2015), *aff'd,* No. 15–12135, 635 Fed.Appx. 789 (11th Cir. Dec. 30, 2015) (per curiam); *Griffin v. SunTrust Bank, Inc.,* No. 1:15–CV–0147–AT (N.D. Ga. filed Jan. 16, 2015); *Griffin v. FOCUS Brands Inc.;* No. 1:15–cv–0170–AT (N.D. Ga. filed Jan. 20, 2015), *aff'd,* No. 1512137, 635 Fed.Appx. 796 (11th Cir. Dec. 30, 2015) (per curiam); *Griffin v. Health Sys. Mgmt., Inc.,* No. 1:15–cv–0171–AT (N.D. Ga. filed Jan. 20, 2015), *aff'd,* No. 15–12138, 635 Fed.Appx. 768 (11th Cir. Dec. 29, 2015) (per curiam); *Griffin v. Lockheed Martin Corp.,* No. 1:15–CV–0267–AT (N.D. Ga. filed Jan. 28, 2015); *Griffin v. Gen. Mills, Inc.,* No. 1:15–cv–0268–AT (N.D. Ga. filed Jan. 28, 2015), *aff'd,* No. 15–12157, 634 Fed.Appx. 281 (11th Cir. Dec. 29, 2015) (per curiam); *Griffin v. Oldcastle, Inc.,* No 1:15–cv–0269–AT (N.D. Ga. filed Jan 28, 2015); *Griffin v. Habitat for Human. Int'l, Inc.,* No. 1:15–CV–0369–AT (N.D. Ga. filed Feb. 6, 2015); *Griffin v. Verizon Comm., Inc.,* No. 1:15–CV–0569–AT (N.D. Ga. filed Feb. 26, 2015), *aff'd,* No. 15–13525, 641 Fed.Appx. 869 (11th Cir. Jan. 12, 2016) (per curiam); *Griffin v. Humana Employers Health Plan of Ga., Inc.,* No. 1:15–CV–0569–AT (N.D. Ga. filed Feb. 26, 2015); *Griffin v. Aetna Health Inc. et al.,* No. 1:15–cv–3750–AT (N.D. Ga. filed Oct. 26, 2015).

As it turned out, she alleged in every single case that she sought plan documentation from the claims administrator. And, in almost every single case, the plan had a valid anti-assignment provision. Again, though, not that she would have known who the plan administrator was or that the plan had an anti-assignment clause in it, because no one would answer her document requests.[2]

General Mills filed its Motion to Dismiss in this case on February 18, 2015. (Doc. 4.) In it, General Mills successfully argued that the plan contained a valid anti-assignment provision that precluded Plaintiff from stating a claim under the statute. The matter was dismissed on May 13, 2015, (Doc. 11), and the Eleventh Circuit affirmed the dismissal on December 29, 2015. (Doc. 18.) General Mills now seeks $3,361.05 in attorney's fees pursuant to 29 U.S.C. § 1132(g), ERISA's fee-shifting provision. (Doc. 16.)

A few other pieces of background information are relevant to Defendant's request for fees. First, Defendant has provided evidence that it twice sought to settle this case for the full $92.00 in allegedly unpaid benefits. (Docs. 16–2 at 6; 16–3 at 13.) Defendant made its first offer on February 11, 2015, before the Court held in the other case that Dr. Griffin was not entitled to statutory penalties, and before Defendant filed its motion to dismiss this case. (Doc. 16–2 at 5–6.) Defendant made its second offer—in the form of a Rule 68 Offer of Judgment—on March 24, 2015,

after the Court had held that Dr. Griffin was not entitled to statutory penalties. (Doc. 16–3 at 13.) In the second offer, Defendant offered to pay pre-judgment interest and Plaintiff's district court filing fees as well as the allegedly unpaid benefits—for a total offer of $493.00. (Doc. 16–3 at 13.) Dr. Griffin rejected Defendant's $493.00 offer and apparently indicated that the claim was worth far more based on her view that she was entitled to statutory penalties.[3] Weeks after Dr. Griffin declined the second offer, the Court dismissed all of Plaintiff's claims in this case. (Doc. 11.) Dr. Griffin consistently participated in motion practice in all of her cases, but she did not respond to Defendant's pending Motion for an Award of Attorney's Fees.

## I. ENTITLEMENT TO FEES

█ Defendants seek attorney's fees only under ERISA's fee-shifting provision. Pursuant to ERISA's fee-shifting provision, a district court, "in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1) (2012), if that party achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). This standard requires more than "trivial success on the merits" or a "purely procedural victory." *Id.*

█ Once it is established that a party had "some degree" of success, the Elev-

---

2. To be fair, Dr. Griffin's document requests, which accompanied her level 1 and level 2 denial of benefits appeals in each case, were long and convoluted patchworks of protests, threats, how-to guides, citations to agency regulations and guidelines, and quotes from court opinions. (*See, e.g.*, Doc. 1 at 33–51.)

3. The Eleventh Circuit eventually affirmed the Court on the issue of statutory penalties based on the limited rights assigned to Dr. Griffin, but not for another 9 months. *See Gen. Mills*, No. 15–12157, 634 Fed.Appx. at 285, 2015 WL 9466979, at *3 n. 5.

enth Circuit "require[s] district courts to consider five factors when deciding whether to award fees to a prevailing party:

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and]

(5) the relative merits of the parties' positions."

*AirTran Airways, Inc. v. Elem,* 767 F.3d 1192, 1201 (11th Cir.2014) (quoting *Freeman v. Continental Ins. Co.,* 996 F.2d 1116, 1119 (11th Cir.1993)). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying Section 502(g)." *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980).[4]

While no factor is decisive and some may not be apropos, there may be other factors that a Court should consider in a particular case. As explained by the current Fifth Circuit,

*Bowen* makes clear that ... the list of five factors to be considered in an ERISA § 502(g) attorneys' fees case is a non-exhaustive, *ejusdem generis* list ("[A] court should consider *such factors* as the following [five factors].... [I]n any individual case, however, *other considerations may be relevant as well.*").

*Riley v. Adm'r of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries,* 209 F.3d 780, 782 (5th Cir.2000) (emphasis in original) (footnote omitted).

Here, as a somewhat procedural matter, Plaintiff's failure to respond "that there is no opposition to the motion." LR 7.1B, NDGa. Substantively, though, "[t]here is no doubt that the Defendant achieved 'some degree of success on the merits' as this Court [dismissed all of] Plaintiff's claims." *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity,* No. 09 CV 0039, 2011 WL 1131110, at *1 (N.D.Ill. Mar. 28, 2011) (dismissing plaintiff's claims at summary judgment based in part on lack of a valid assignment and granting attorney's fees); *see also Feinstein v. Saint Luke's Hosp.,* No. CIV.A. 10–4050, 2012 WL 4364641 at *1 (E.D.Pa. Sept. 25, 2012) (granting attorney's fees to defendants after their successful motion to dismiss); *Christian v. Honeywell Retirement Benefit Plan,* No. CIV.A. 13–4144, 2014 WL 1652222, at *3, *8 (E.D.Pa. Apr. 24, 2014) (granting attorney's fees to defen-

---

4. In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981. To the extent Plaintiff might have argued that a heightened standard should be applied to a Defendant seeking fees against an ERISA plaintiff, the Former Fifth Circuit declined to apply the *Christiansburg Garment* distinction between prevailing plaintiffs and defendants to claims for attorney's fees under ERISA. *Bowen,* 624 F.2d at 1266 n. 24 (5th Cir.1980) (discussing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

dants after their successful motion to dismiss plaintiff's claims as time-barred).[5]

■ Defendant argues that the five factors favor an award of fees. After a thorough consideration of the factors and the record in this case, the Court agrees. The first factor—culpability or bad faith—is neutral. Plaintiff has filed numerous suits and in many of them sought statutory penalties in extreme multiples of the amounts sought for her respective unpaid benefits claims. However, ERISA permits daily-accruing statutory penalties for a plan administrator's failure to respond to a request for plan documentation, and there is no obvious requirement in the statute (nor has Defendant pointed to any) that the entity seeking documents have any claim for unpaid benefits whatsoever. The fact that Plaintiff, proceeding *pro se* in this matter, continued to demand some portion of statutory penalties in her settlement negotiations after the Court had ruled against her on that issue in a related case was likely based on her confidence that she would succeed on appeal. In that sense, Plaintiff's position was likely more akin to hope than to culpability or bad faith. The Court does not "expect a lay person to appreciate the difference between a federal statutory violation and plaintiff's perception of unfair treatment," particularly in such a complex area of the law. *Baker v. Greater Kansas City Laborers Welfare Fund,* 716 F.Supp. 1229, 1230 (W.D.Mo.1989).

The second factor—ability to pay—is neutral. The Court assumes that, as a practicing dermatologist, Plaintiff would be able to satisfy the rather modest fees sought in this case: $3,361.05. Plaintiff has not submitted any evidence that she would be unable to pay an award, so this factor does not counsel against an award.

The third factor—deterring others—is neutral to the extent that it is relevant. To start, deterrence is more obviously relevant when a plaintiff seeks fees after a defendant is found to have violated ERISA. *See, e.g., AirTran Airways,* 767 F.3d at 1202. Defendant argues this factor is relevant and weighs in favor of an award of fees because "there is great potential for plaintiffs who are not plan beneficiaries to attempt Plaintiff's strategy to extract large settlements from minimal actual alleged damages." (Doc. 16–1 at 9.) However, as explained above, there is no obvious requirement under ERISA that the amount of statutory penalties sought be some small multiple of the amount of unpaid benefits sought. Moreover, Defendant misses the point that Dr. Griffin tried to request the plan documents from the plan administrator, but was never given the plan documents so she could figure out

**5.** With regard to whether Defendant's success was "on the merits," this Court initially dismissed Plaintiff's claims without prejudice for lack of statutory standing. However, the Eleventh Circuit clarified that the question statutory standing really poses is "whether the plaintiff 'has a cause of action under the statute.'" *Griffin Gen. Mills, Inc.,* No. 15–12157, 634 Fed.Appx. 281, 284, 2015 WL 9466979, at *2 (11th Cir. Dec. 29, 2015) (per curiam) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 1387–88 & n. 4, 188 L.Ed.2d 392 (2014) (internal quotation marks omitted). The Eleventh Circuit then construed and affirmed—this Court's decision as "a determination that [Dr. Griffin] failed to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Id.* 284, 2015 WL 9466979, at *2. "The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (quotation and citation omitted).

who the plan administrator was—or if the plan contained an anti-assignment provision. (*See* Doc. 1 at 16–20.) Accordingly, the Court finds it hard to imagine what deterrent value awarding fees would have in Plaintiff's filing of this case.

The fourth factor—whether Defendant sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself—is also neutral. Defendant argues that it was "protecting plan assets against an opportunistic plaintiff who is not a plan beneficiary herself." (Doc. 16–1 at 9.) Although it is clear that a money judgment against General Mills would adversely affect General Mills, it is less clear how a money judgment against General Mills would adversely affect the participants and beneficiaries of General Mills's ERISA plan. It is very clear, on the other hand, that "Plaintiffs will have added incentive to bring suits that benefit all plan beneficiaries and to enforce the policies behind ERISA if their attorneys' fees will be paid by defendants." *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 721 (7th Cir.1981). For this reason, "in general, the fourth factor is significant in determining the benefits conferred in a suit brought by ERISA plaintiffs, rather than the benefits of dismissing a meritless ERISA suit." *Id.*

The final factor—the relative merits of the parties' positions—weighs in favor of granting fees. Defendant's position as to the enforceability of an anti-assignment clause in an ERISA plan document has been the settled law in the Eleventh Circuit since 2004. *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294–96 (11th Cir.2004). And Defendant's position on Plaintiff's lack of entitlement to statutory penalties based on her requesting documents from the wrong entity has been the settled law in the Eleventh Circuit since at least 2008. *See Byars v. Coca–Cola Co.*, 517 F.3d 1256, 1270–71 (11th Cir.2008).

Another important factor here is the degree to which Defendant attempted to resolve this case, and even recompense Plaintiff for her filing fee. Defendant offered to settle this case not once but twice. In this sense, General Mills attempted to resolve this case on acceptable terms.

After a thorough review of the record in this case and the factors considered when awarding fees to the prevailing party, the Court finds that an award of fees pursuant to 29 U.S.C. § 1132(g)(1) is appropriate in this particular case.

## II. CALCULATION OF FEES

■ "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citation omitted). Defendant argues it is entitled to $3,361.05 in attorney's fees for the services of Robins Kaplan LLC. Defendant submitted an affidavit of Mr. V. Robert Denham, Jr. to evidence that the following factors went into calculating that amount:

1) Many documents were initially drafted by in-house counsel, minimizing the time spent on the matter by outside counsel Robins Kaplan LLC.

2) Robins Kaplan agreed to a 10% discount for its work on this case.

3) Mr. Denham, a partner and 35–year litigator, spent 6.6 hours on the case at a rate of $650.00/hour.

4) Ms. Adler, an associate, spent 3.7 hours on the case at a rate of $455.00/hour.

5) Ms. Spencer, a paralegal, spent 2.3 hours on the case at a rate of $170.00/hour.

6) Half of the resulting total—$6,722.10—will be paid by BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota, the claims administrator who was never made a party to this case.

7) Defendant does not seek fees associated with filing this motion for attorney's fees.

(Affidavit of V. Robert Denham, Doc. 16–3.)

The Court finds that Defendant's request for $3,361.05 in fees is reasonable given the circumstances presented in this case. ERISA is a complex area of the law, and $3,361.05 is within the spectrum of appropriate attorney's fees to seek after successfully moving to have the case dismissed for failure to state a claim and successfully arguing against a motion to amend the complaint. (Docs.4, 7, 10.)

### III. CONCLUSION

While this is a sad tale about what can go wrong when attempting to proceed *pro se* in a complex area of the law, Defendant appears to have taken Plaintiff's unrepresented status into account in a meaningful way when deciding on the strategies and tactics of litigating this case, decisions that translated directly into reasonable attorneys fees for defending this action. For this and the other foregoing reasons, Defendant's Motion for an Award of Attorney's Fees [Doc. 16] is **GRANTED** and Plaintiff is **ORDERED** to pay directly to

Defendant, within a reasonable amount of time, $3,361.05 in attorney's fees.

**IT IS SO ORDERED** this 15th day of January, 2016.