[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15146
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cv-60698-KAM

MELISSA C. CROSS,

Plaintiff - Appellant,

versus

THE QUALITY MANAGEMENT GROUP, LLC,
THE QUALITY MANAGEMENT GROUP, LLC
DEFINED BENEFIT PENSION PLAN,

Defendants - Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(September 27, 2012)

Before MARCUS, FAY and EDMONDSON, Circuit Judges.

PER CURIAM:

Appellant Melissa C. Cross (now "Schneeberger") appeals from the district court's denial of her motion for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), the attorneys' fees provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 et seq. Appellees The Quality Management Group, LLC ("QMG") and the QMG Defined Benefit Pension Plan ("the Plan") (collectively, "the Defendants") cross-appeal the district court's denial of their motion for attorneys' fees under § 1132(g)(1). In the underlying ERISA action, Schneeberger claimed that she was 100% vested in her pension benefits under the Defendants' Plan, while the Plan calculated Schneeberger's vesting at 60%. The parties settled the action based on a 75% vesting calculation, and then both parties moved the district court for awards of attorneys' fees. Exercising its discretion, the district court denied both motions for fees.

On appeal, Schneeberger argues that: (1) the district court applied an improper legal standard in denying her fees by using a five-factor test in contravention of Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149 (2010); and (2) the district court clearly erred in finding that the Defendants did not litigate in bad faith and in assessing Schneeberger's claims. The Defendants argue that the district court abused its discretion in how it assessed the five-factor test to deny them fees. After careful review, we affirm.

2

We review orders on attorney's fees for abuse of discretion, "which occurs if the court fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous," or "commits a clear error of judgment." Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1039 (11th Cir. 2010) (quotation omitted). Clear error in factual findings occurs when, "although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246 (11th Cir. 2002) (quotation omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it [for clear error] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985). We review the district court's application of law de novo. Johnson, 299 F.3d at 1246.

Section 1132(g)(1) of ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. § 1132(g)(1). In interpreting this provision, the Supreme Court in Hardt directed, first, that "a fees claimant must show 'some degree of success on the merits'

before a court may award attorney's fees under § 1132(g)(1)."  130 S. Ct. at 2158.

It then said: "We do not foreclose the possibility that once a claimant has satisfied

this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a

court may consider . . . five factors . . . in deciding whether to award attorney's fees."

Id. at 2158 n.8.  These five factors are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of
> opposing parties to satisfy an award of attorneys' fees; (3) whether an
> award of attorneys' fees against the opposing parties would deter other
> persons acting under similar circumstances; (4) whether the parties
> requesting attorneys' fees sought to benefit all participants and
> beneficiaries of an ERISA plan or to resolve a significant legal question
> regarding ERISA itself; and (5) the relative merits of the parties'
> positions.

Id. at 2154 n.1 (quotation omitted).

First, we are unpersuaded by Schneeberger's argument that the district court

applied an incorrect legal standard in assessing the motions for attorneys' fees.  As

the record shows, the approach sanctioned by the Supreme Court in Hardt is exactly

the one taken by the district court in this case.  The district court began by quoting

from Hardt, and recognizing that "the Court has broad discretion to award fees and

costs 'as long as the fee claimant has achieved "some degree of success on the

merits.'"" D. Ct. Order at 3 (quoting Hardt, 130 S. Ct. at 2152).  It continued: "Once

that requirement is satisfied, the Court may consider a five-factor test developed prior

to Hardt in determining whether an award of fees and costs is appropriate," and cited the five factors. D. Ct. Order at 3-4. Applying this two-part approach, the district court first laid out the parties' arguments as to whether they had achieved "some success on the merits," specifically noting that "the parties entered into a settlement agreement which provided Plaintiff a distribution based upon a 75% vesting in the plan," and that "Plaintiff . . . claims some success on the merits and notes that prior to the instant lawsuit being filed Defendants[] claimed she was only entitled to a determination of 60% vesting." D. Ct. Order at 3. It then found: "[I]n the end, Plaintiff received 15% more than that to which Defendants initially claimed she was entitled." D. Ct. Order at 4. The district court proceeded by applying the five-factor test to each of the parties, and ultimately concluded that neither were entitled to fees. In so doing, the district court properly applied Hardt's steps -- that is, it first determined that Schneeberger had obtained "some degree of success on the merits," and then applied the five-factor test that Hardt expressly did not foreclose. Hardt, 130 S. Ct. at 2158 & n.8. There was thus no error in the district court's recitation, or application, of the Hardt test.

Schneeberger appears to suggest that the district court should simply have determined whether she obtained "some degree of success on the merits," and stopped there. But Hardt did not say this -- rather, it allowed for the application of the five

5

factors before a district court ultimately determined a party's entitlement to fees. Indeed, in Hardt itself, the district court had first determined whether the fees claimant was a prevailing party, and then had applied the five-factor test. Id. at 2155. After agreeing with the district court's interpretation of "prevailing party," the Supreme Court concluded that the "District Court properly exercised its discretion to award Hardt attorney's fees in this case." Id. at 2159. The Supreme Court thereby sanctioned the district court's secondary use of the five-factor test, which was the same approach taken by the district court did in the case before us.

Nor are we persuaded by either parties' claims that the district court clearly erred in making findings under the five-factor test, or abused its discretion in ultimately denying either party fees. As for the first prong -- whether either party acted in bad faith -- neither appellate brief has made a compelling showing. Both seem to suggest that the other exhibited bad faith by taking litigating positions that were in dispute, or by causing some amount of delay in the litigation process. However, we have said in various contexts that bad faith is more than mere negligence; it is "the conscious doing of a wrong," United States v. Gilbert, 198 F.3d 1293, 1299 (11th Cir. 1999), "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims," Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225-26 (11th

6

Cir. 2003), or "deliberate deception, gross negligence or recklessness," Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co., 198 F.3d 1332, 1336 (11th Cir. 1999). Even assuming that these parties may have taken unreasonable positions in the course of the litigation, they have not submitted sufficient proof of deliberate wrongdoing in order to show that the district court clearly erred in making these findings.[1]

The parties also fail to explain how the district court clearly erred in making its remaining findings. The parties do not mention prong 2 of the test, and offer nothing more than conclusory assertions as to why the district court clearly erred in deciding prongs 3 and 4.

As for the last one -- the relative merits of the parties' positions -- Schneeberger claims that the district court should not have relied on the Defendants' description of the Plan, and should not have found that her reliance on her marital settlement agreement, rather than the Plan, was "untenable." But not only did the district court expressly say that it "consider[ed] the record in its entirety," Schneeberger did not contest the Defendants' description of the Plan, so we do not see how this could have amounted to clear error. Moreover, it is clear that "[t]he

---

[1] At most, Schneeberger points to a "threatening" letter and text message from her former husband, Karl Cross, a manager of QMG and Trustee of the Plan. While we agree that a coercive letter could result in bad faith, we do not believe it rose to this level here, especially considering the substance of the settlement offer made in the communications. Indeed, they proposed a 75% vesting calculation and $5000 in attorneys' fees, which actually offered more than Schneeberger ultimately received.

7

award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Liberty Life Assur. Co. of Boston v. Kennedy, 358 F.3d 1295, 1302 (11th Cir. 2004) (quotation omitted).  Thus, it is unclear how her reliance on non-Plan documents, when such documents existed, was tenable. See, e.g., Mack v. Kuckenmeister, 619 F.3d 1010, 1018 (9th Cir. 2010) ("[A] [qualified domestic relations order] only renders enforceable an already-existing interest. [It] does not somehow create a right to plan benefits or create a right to enforce a state law order.").

In short, as the district court observed, the Defendants sought to defend against Schneeberger's claim for 100% of vesting that was not legitimate, and Schneeberger legitimately sought more than 60% of vesting based on her employment records. Both parties' positions had some merit, but neither had relatively more merit than the other.  As a result, the district court did not clearly err in making this finding, nor did it abuse its discretion in how it weighed the factors to deny attorneys' fees to both parties.

**AFFIRMED.**