John E. Ott, Chief United States Magistrate Judge
This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). The Court previously found that the Defendants improperly denied Plaintiff Antonio Campbell's claim for disability benefits. What remains is Plaintiff's Petition for Attorneys' Fees and Costs. (Doc. 83). The petition is opposed in part by Defendant United of Omaha Life Insurance Company ("United of Omaha"). (Doc. 84). The matter is fully briefed and supported by the parties. Upon consideration, the Court finds the petition is due to be granted in part and denied in part as discussed below.
I.
The Court previously ruled on the parties' cross-motions for summary judgment, finding that United of Omaha's benefits determination was not reasonable concerning the period through October 2012. The Court further found that the denial of benefits determination was reasonable beyond that date. After Plaintiff filed a motion for reconsideration, the Court granted the motion and remanded the matter to the Plan administrator for further proceedings.
*1141 Plaintiff was awarded "a fully favorable decision ... on remand." (Doc. 85).
The Court retained jurisdiction over the case to afford Plaintiff's counsel an opportunity to submit their petition for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(B). (See Doc. 59 at 2, n.3). Plaintiff now seeks $87,623.50 in attorneys' fees and $4,286.26 in costs for a total of $91,909.76. (Doc. 83 at 11). He has requested an hourly rate of $450 to $500 for his lead attorney, Thomas O. Sinclair, and an hourly rate of $225 for Mr. Sinclair's co-counsel, Lee P. Fernon, Jr. (Doc. 83-5). United of Omaha argues that an attorney's fee award of not more than $41,573.00 is appropriate. (Doc. 84 at 18). United of Omaha does not challenge Plaintiff's request for costs. (Id. )
United of Omaha asserts Plaintiff is not entitled to recover the entire requested fee because (1) "Plaintiff's 'success' is offset by the fact that the Court dismissed" his other claims; (2) the relevant factors for the Court's consideration favor a denial of the petition; (3) the claimed hourly rates are unreasonable; (4) some of the hours claimed are not recoverable; and (5) Plaintiff has not demonstrated that the number of hours expended by counsel is reasonable.
A.
Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A claimant "must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." Hardt v. Reliance Stand. Life Ins. Co. , 560 U.S. 242, 254, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). Once it is established that a party had "some degree" of success, the Eleventh Circuit Court of Appeals "require[s] district courts to consider five factors when deciding whether to award fees to a prevailing party:
(1) the degree of the opposing parties' culpability or bad faith;
(2) the ability of the opposing parties to satisfy an award of attorney's fees;
(3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;
(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and]
(5) the relative merits of the parties' positions."
AirTran Airways, Inc. v. Elem , 767 F.3d 1192, 1201 (11th Cir. 2014) (quoting Freeman v. Continental Ins. Co. , 996 F.2d 1116, 1119 (11th Cir. 1993) ). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying [ 29 U.S.C. § 1132(g) ]." Iron Workers Local No. 272 v. Bowen , 624 F.2d 1255, 1266 (5th Cir. 1980).[1]
The first matter in this case is whether Plaintiff achieved some degree of success on the merits. The Court finds that Plaintiff did achieve the requisite degree of success to warrant an award of attorney's fees. Through the efforts of Plaintiff's counsel, the record demonstrates that Plaintiff was awarded "a fully favorable decision ... on remand." (Doc. 85). The Court concludes Plaintiff has cleared the *1142 first hurdle. This requires the Court to move on to the five factors enumerated above.
As to the first factor, the "culpability or bad faith" of United of Omaha, Plaintiff argues that the defendant "culpably breached its fiduciary duties and issued an unreasonable decision that ignored and misstated the medical evidence of record." (Doc. 83 at 3). Plaintiff further argues that United of Omaha "compounded that culpability when it chose to uphold that decision and deny Plaintiff's much needed benefits." (Id. )
"[B]ad faith is more than mere negligence; it is the conscious doing of a wrong, where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims, or [involves] deliberate deception, gross negligence or recklessness." Cross v. Quality Mgmt. Group, LLC , 491 Fed.Appx. 53, 55 (11th Cir. 2012) (quotation marks and citations omitted).[2] This is an incredibly high standard to meet. While the Court did find that United of Omaha's denial in this matter was arbitrary and capricious, it did not find that United of Omaha consciously acted to wrong Plaintiff. Additionally, United of Omaha's counsel did not act recklessly, with gross negligence or in a deliberately deceptive manner, or pursue a frivolous claim. Stated another way, United of Omaha simply was wrong in its determination. However, Plaintiff's situation is compelling. His doctors concluded he was disabled. Having had the opportunity to see Plaintiff at a hearing on a motion in this case, the court notes that his debilitating condition was, at that juncture, obvious. United of Omaha's counsel also had an opportunity to see Plaintiff, but that does not warrant a finding against United of Omaha on this first factor. Thus, evaluation of this factor tends to favor United of Omaha.
As to the second factor-the ability to satisfy an award-there is no dispute United of Omaha has the ability to satisfy an award. Thus, this factor weighs in favor of Plaintiff.
As to the third factor-deterrence of other persons acting in similar circumstances-Plaintiff argues that "the deterrent effect of awarding fees in cases like Plaintiff's cannot be understated because [t]here are no statutory punitive damages in ERISA litigation, so the only real avenue for deterrence is the award of attorneys' fees." (Doc. 83 at 4). Plaintiff continues:
Otherwise, there is simply no reason for an insurer to pay benefits at all because the most they could stand to lose is the past benefits they should have paid in the first place. Given the scant resources of disabled workers, the deferential standard of review, and low rate of return for ERISA attorneys, ERISA insurers are given wide latitude to pressure participants into taking low settlements or simply throwing up their hands and giving up.
(Id. ) United of Omaha "acknowledges that the prospect of a fee award likely deters other insurance companies in a similar situation." (Doc. 84 at 4). However, United of Omaha counters that "insurers are already bound by duties imposed by law and the particular plan documents." (Id. at 4-5). It further argues that "[t]he possibility of a fee award should not be used to push insurers to pay claims that are not payable because doing so would violate the insurer's duties to other participants in the plan." (Id. at 5). Premised on Plaintiff's ability to navigate the difficult path to *1143 show that United of Omaha acted unreasonably and the fact that an attorney's fee award is certainly a deterrent to future unreasonable benefits decisions, the Court finds this factor weighs in favor of Plaintiff and an award of attorney's fees in this case.
As to the fourth factor-benefit to others or resolution of a significant legal issue-Plaintiff argues that to the extent this factor has any application, "his motion for reconsideration did address the legally significant question of the proper remedy in overturning an insurer's denial of benefits." (Doc. 83 at 5). He goes on to argue, "Put in other terms, courts may now review the results of this Court's labor and see that where a claimant asks for remand (particularly where there is some ambiguity in the record), the court is not constrained to rendering a decision on the merits based on the record." (Id. ) United of Omaha counters that this factor does not apply here, but, even if it did, it favors the denial of the request for fees. Specifically, United of Omaha asserts that the Court did not resolve a significant ERISA legal question in this case or resolve a plan interpretation issue that benefitted other plan participants. (Doc. 84 at 5).
After the Court issued its initial opinion finding for Plaintiff and ordering United of Omaha to award specific, limited benefits to Plaintiff, he filed a motion for reconsideration, arguing that the correct course was for the Court to remand the matter to the administrator. The Court agreed, stating:
As to the second matter, [concerning a remand to the administrator,] the court finds that Campbell's argument is well-founded to the extent the court determined his LTD benefits properly terminated as of October 2012. Despite its prior ruling, the court now believes the proper and prudent recourse is to remand this matter to the Plan administrator for further proceedings premised on the finding that the administrator improperly denied him benefits when his LTD policy became effective. While the administrator will be required to award Campbell the STD and LTD benefits erroneously denied because the decisions were arbitrary and capricious, nothing in this order precludes the administrator from further evaluating the length and duration of Campbell's disability for the purpose of awarding LTD benefits. The administrator is not limited, however, by the court's previous determination concerning the duration or scope of his LTD benefits.
(Doc. 79 at 3 (footnote omitted)). United of Omaha is correct that this determination does not benefit other participants in the plan. However, it does provide some persuasive authority for the future when a court must evaluate the proper course in deciding whether to render a decision premised on the record or to remand the case to an administrator. This is particularly noteworthy in this case because, while this Court determined that limited benefits were due to be awarded, the Plan administrator found that full benefits were due. Thus, this factor also weighs in favor of an award of an attorney's fee.
As to the last factor-the relative merits of the parties' positions-Plaintiff argues that his position is "clearly superior to Defendant's given the deferential standard of review he had to overcome." (Doc. 83 at 5). United of Omaha counters that while Plaintiff was successful on his motion to reconsider, the Court also rejected Plaintiff's claims for breach of fiduciary duty and failure to provide plan documents, as well as his argument that the arbitrary and capricious standard should not apply. (Doc. 84 at 6). The Court finds for Plaintiff on this factor. Obtaining relief in cases such as this one is no easy task. The standard for relief is high. Plaintiff's position *1144 on the merits was correct, as evidenced by the final determination by the Plan administrator on remand. Thus, this factor weighs in favor of an award of a reasonable fee.
Upon a consideration of the five factors enumerated above, the Court finds that an award of an attorney's fee is warranted in this case. Plaintiff's petition, therefore, is due to be granted in this regard.
B.
Having found that Plaintiff is entitled to a fee award, the next matter is to determine whether the requested amount is reasonable. "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in Johnson v. Geogia Highway Express, Inc. , 488 F.2d 714 (5th Cir. 1974)."[3] Bivins v. Wrap It Up, Inc. , 548 F.3d 1348, 1350 (11th Cir. 2008). Plaintiff bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Housing Auth. of the City of Montgomery , 836 F.2d 1292, 1303 (11th Cir. 1988).
United of Omaha challenges Plaintiff's fee request on two general grounds: (1) the claimed rates exceed the hourly rates in the Birmingham, Alabama, legal community and (2) some of the hours claimed are unrecoverable or not reasonable. (Doc. 84 at 7-17).
1.
As to the first challenge-the reasonableness of the hourly rate-the question concerns what is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Loranger v. Stierheim , 10 F.3d 776, 781 (11th Cir. 1994) (quoting Norman , 836 F.2d at 1301 )). The Eleventh Circuit has stated:
A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Blum v. Stenson , 465 U.S. at 895-96 n. 11, 104 S.Ct. at 1547 n. 11. Accord, Gaines v. Dougherty County Board of Education , 775 F.2d 1565, 1571 (11th Cir. 1985). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. NAACP v. City of Evergreen , 812 F.2d [1332] at 1338 [ (11th Cir. 1987) ]. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. Blum , 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. See Hensley , 461 U.S. at 439 n. 15, 103 S.Ct. at 1943 n. 15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the *1145 testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.
Norman , 836 F.2d at 1301. "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " American Civil Liberties Union of Ga. v. Barnes , 168 F.3d 423, 437 (11th Cir. 1999) (citing Cullens v. Georgia Dep't. of Transp. , 29 F.3d 1489, 1494 (11th Cir. 1994) ).
The initial challenge under the first prong of United of Omaha's opposition requires the Court to determine the relevant legal community. Plaintiff contends that community is "the community of practitioners in that subject matter" because of the highly specialized nature of ERISA work and the fact that "the market for legal services in [ERISA] is a national market."[4] (Doc. 83 at 7). United of Omaha does not address Plaintiff's contention head-on, but, instead argues that Plaintiff's counsel has not actually billed or been paid at the requested rates. (Doc. 84 at 8). United of Omaha also presents evidence in the form of declarations from local counsel and argument in support of the same that lower rates are the more appropriate prevailing rates in Birmingham, Alabama and with regard to this case. (Id. at 8-12).
In deciding this issue, Norman is instructive in that the court held that "[t]he [deciding] court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." 836 F.2d at 1303. Additionally, the Norman court held that the offered "evidence necessarily must speak to rates actually billed and paid in similar lawsuits." ( Id. at 1299 ).
In support of the petition in this case, Plaintiff's counsel, Mr. Thomas O. Sinclair, has submitted a personal declaration. In pertinent part, it substantiates that he began handling ERISA cases in 2002 and that a large part of his practice involves claims on behalf of plan participants. (Doc. 83-5 at ¶ 8). According to the declaration, he has "represented hundreds of ERISA clients from Hawaii to Israel and all points between." (Id. ) He has also participated "on occasion in representative litigation such as class actions and [has] been appointed *1146 class counsel." (Id. at ¶ 10). Finally, he states that "[t]here is a limited pool of attorneys nationwide who specialize in litigating ERISA claims on behalf of plan participants." (Id. at ¶ 12).
Mr. Sinclair's declaration also details the background of his co-counsel, Mr. Lee P. Fernon, Jr. (Doc. 83-5 at ¶ 13). Mr. Sinclair states that Mr. Fernon graduated summa cum laude in 2010 from the University of Alabama. He was a judicial law clerk for the Honorable William Royal Ferguson of the Northern District of Texas from 2010-11 and for the Honorable Jerome Kearney of the Eastern District of Arkansas for three years. (Id. ) He has been at "the Sinclair Law firm since April 2016, and, has addressed a broad spectrum of ERISA issues during that time." (Id. )
Mr. Sinclair also has submitted four additional declarations for the Court's consideration. The first is from Mr. Eric Buchanan. Mr. Buchanan is located in Chattanooga, Tennessee and practices primarily in the areas of disability insurance, ERISA long-term disability, and Social Security disability claims. (Doc. 83-1 at ¶ 2). He states that his published hourly rate is $575.00. (Id. at ¶ 8). In his opinion, Mr. Sinclair's requested rates of $450.00 to $500.00 during the relevant period is reasonable considering Mr. Sinclair's ability and reputation, and in light of the result he obtained in this case. (Id. at ¶ 13).
The second declaration is from Mr. Myron Allenstein. Mr. Allenstein is located in Gadsden, Alabama and regularly represents individuals with disability-related claims in this court. He opines that Mr. Sinclair's requested rates are reasonable based "on [his] knowledge of fees awarded in other cases nationally." (Doc. 83-2 at ¶ 5). He further opines that the requested rate is "actually at the low end of the usual range awarded to counsel who, like Mr. Sinclair, have a great deal of experience and knowledge in this complex area of the law and have a specialized ERISA plaintiffs' practice." (Id. )
The third declaration was executed by Mr. Patrick DiCarlo with the Alston & Bird law firm in Atlanta, Georgia. It was prepared in May 2011 in a ERISA case in the United States District Court for the Eastern District of Virginia, Richmond Division. In the declaration, Mr. DiCarlo states that he charged an hourly rate of $525.00 in that ERISA case. (Doc. 83-3).
Lastly is the declaration of Mr. Howard Shapiro with Proskauer Rose LLP in New Orleans, Louisiana, prepared in January 2017 in an ERISA case in the United States District Court for the District of Arizona. The declaration quotes "discounted" ERISA rates of $725.00 to $400.00, depending upon the experience of the attorneys. (Doc. 83-4 at ¶¶ 12 & 14).
In opposing Plaintiff's proposed hourly rates, United of Omaha argues the appropriate legal market for determining reasonable rates is the Birmingham, Alabama market. (Doc. 84 at 11-12). It further contends that the Court should utilize an hourly rate of $325 for Mr. Sinclair and $225 for Mr. Fernon. (Id. ) In support of its contentions, United of Omaha relies upon the declaration of Mr. Christopher L. Yeilding with the Balch and Bingham LLP law firm and Mr. John S. Johnson, counsel of record in this case. Mr. Yeilding has been licensed in Alabama since 2002 and currently practices in Birmingham, Alabama. He states that he has "worked on many ERISA-governed employee benefits lawsuits" since 2002. (Doc. 84-1 at ¶ 2). He also states that based on his experience and practice, he is "familiar with the typical hourly rates obtained for non-contingency fee work for ERISA claims and counseling in the Northern District of Alabama." (Id. at ¶ 4). He concludes that the reasonable hourly rate for Mr. Sinclair in *1147 this case is no more than$325.00 per hour and for Mr. Fernon is $225.00. (Id. at ¶ 6). In so opining, he states that "this case included standard ERISA issues for which no specialized knowledge or training was required." (Id. at ¶ 7). Specifically, he states:
This is a standard ERISA benefits case. There were no disputes as to the appropriate jurisdiction or forum. The Complaint was filed in federal court pursuant to ERISA jurisdiction. The only issue properly before the Court was whether Plaintiff was entitled to disability benefits. Plaintiff's claims of breach of fiduciary duty and failure to provide plan documents should not have ever been alleged as part of this case .... Accordingly, I do not believe it is appropriate to utilize a higher rate more comparable to a national rate or a rate utilized in a larger metropolitan area (i.e. , Atlanta, Georgia, New Orleans, Louisiana, or Phoenix, Arizona), as opposed to the typical rates applied in Birmingham.
(Id. at ¶ 7). He further states:
Additionally, it is my opinion that some of the work in this case was unnecessary, particularly on the issue of the appropriate standard of review and the claims for relief for breach of fiduciary duty and failure to provide plan documents. It is my opinion that there was no legitimate basis for the Plaintiff to contend that the standard of review should have been de novo .... Moreover, it is my opinion that there was no basis for Plaintiff to include in the Complaint claims for relief for alleged breach of fiduciary duty and failure to provide plan documents. The Court properly dismissed those two claims; however, the parties had to engage in briefing on the Motion to Dismiss which was entirely avoidable if Plaintiff had included the only claim in his Complaint for which he had any basis to allege, instead of adding claims that were not supported.
(Id. at ¶ 8).
In Mr. Johnson's affidavit, he states that he has been practicing law since 1997 and he has handled ERISA litigation since 2002. (Doc. 84-2 at ¶ 3). He further states that he charged United of Omaha $200.00 per hour throughout the proceedings in this case. (Id. ) He explains that this rate is discounted based on the volume of work he does for United of Omaha. (Id. ) Lastly, he states that his co-counsel, Mr. Henry T. Morrissette, charged $220.00 per hour for his work. (Id. )
The Court believes that ERISA law is complex and the specialized experience and expertise is necessary "to effectively and efficiently prosecute ERISA claims." Rosario v. King & Prince Seafood Corp. , 2010 WL 11519378, *6 (S.D. Ga. July 15, 2010). Additionally, the Court finds that it should not overlook the rates charged in the national markets due to the specialized nature of the work. That does not mean, however, that the circumstances in this case require application of national rates. The Court finds that the circumstances do not justify the rates requested by Plaintiff for a number of reasons.
First, Plaintiff has not met his burden of demonstrating that there are a lack of lawyers who are willing to handle cases such as this in this area. Only Mr. Buchanan states that there are very few attorneys "in the Eleventh Circuit and in Alabama specifically" who "have the skills and knowledge to regularly handle ERISA claims and litigation successfully." (Doc. 83-1 at ¶ 12). This statement is very subjective, speculative, and conclusory. Plaintiff has not met his burden of demonstrating that an exception to the general rule applies in this case. Second, Plaintiff has not offered any evidence showing that he had difficulty in finding counsel to represent *1148 him in this matter. Third, the undersigned has not seen any evidence in this case, or otherwise, that ERISA plaintiffs are having difficulty retaining counsel in this jurisdiction. Accordingly, the Court will apply the prevailing market rates applicable to cases filed in the Southern Division of this Court in deciding the reasonable rate.
The next issue is what is the reasonable rate in the Birmingham, Alabama market. Neither Mr. Buchanan nor Mr. Allenstein testify that they have specifically billed and been paid or been awarded the proposed rates of $450-$500 per hour in cases filed in the Northern District of Alabama, much less Birmingham, Alabama. Thus, their affidavits are not particularly instructive or persuasive.
Mr. Sinclair states in his petition that he "typically charge[s] $575.00 an hour for ERISA litigation." (Doc. 83 at 8). He also states that he agreed to a reduced rate of $450 to $500 an hour in this case. (Id. ) In the petition, he also states that his rates "are well within the rates typically charged for this work." (Id. ) In support of this statement he lists a reference to the "Dell & Scheffer Law Firm" in Florida, which states, "Our hourly attorney fee ranges from $400 to $650 depending on the attorney working on the claim." (Id. ) Mr. Sinclair also cites to hourly rates awarded in various cases from California, Wisconsin, New York, and the Seventh Circuit Court of Appeals. This information, however, is of little use since the Court is unable to evaluate the nature of the claims, the skill set of the lawyers, their experience or their reputation in those other cases. See Norman , 836 F.2d at 1305 (noting that the affidavits "do not show that the rates to which they attest were charged in similar cases for similar clients by lawyers of similar skill, experience, and reputation"). Additionally, they are not rates awarded in this District.
In support of the requested rates, Mr. Sinclair also states in his declaration, "Based on my knowledge of what other ERISA attorneys charge in this area and throughout the country, I believe these rates are reasonable considering the national market for ERISA attorneys." (Doc. 83-5 at ¶ 18). This statement is conclusory. Mr. Sinclair has not offered the requisite detail to justify an award of the requested amounts. For instance, with regard to his billing rate, what an attorney "typically charges" may be different from what he actually recovers or what he has been awarded by a court in a fee petition. Mr. Sinclair does not state that he has been awarded such an hourly rate by any court for a case similar to the present one.
Additionally, Mr. Yeilding's declaration is not particularly helpful because it is conclusory as well. He opines that the rate he proposes for Mr. Sinclair-$325.00-is "consistent with the high-end of rates typically charged in Birmingham" and that the rate he proposes for Mr. Fernon-$225.00-is "not unreasonable for his level of experience." (Doc. 84-1 at ¶ 6). Mr. Yeilding does not offer any citations to specific cases where the awards were at the levels he posits. (See id. ).
In determining a reasonable rate in this case, the Court will rely, at least in part, on its own expertise. See Parker v. Healthcare Investment Group, Inc. , --- F.Supp.3d ----, ----, 2017 WL 4222626, *5 (N.D. Ala. Sept. 21, 2017) (J. Hopkins) (citing Norman , 836 F.2d at 1303 (recognizing that a court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of [testimony of] witnesses as to value" (emphasis deleted) (quoting Campbell v. Green , 112 F.2d 143, 144 (5th Cir. 1940) )); see also *1149 Loranger v. Stierheim , 10 F.3d 776, 781 (11th Cir. 1994) (citing Norman and Campbell for the same proposition). In reaching its determination of an appropriate fee award, the Court has "also considered the experience and reputation of the attorneys (as attested to by the affidavits and declarations),[ ] the customary fees, the evidence provided by both sides as to the reasonable hourly rate, the degree to which opinions have been substantiated by examples of underlining comparable cases, and the Court's own" experience. Parker , --- F.Supp.3d at ----, 2017 WL 4222626 at *5.
With the foregoing considerations in mind, the Court finds that the reasonable rate for Mr. Sinclair is $325.00 per hour for the hours worked from the commencement of the attorney-client relationship until December 31, 2014; $335.00 for the hours from January 1, 2015, through December 31, 2015; and $350.00 for the hours worked after January 1, 2016. The Court further finds the requested rate of $225.00 per hour is reasonable for Mr. Fernon during the relevant period.
2.
United of Omaha next asserts that Plaintiff cannot recover 2.9 hours incurred in "pre-litigation administrative proceedings" during 2013. (Doc. 84 at 12-13). This challenge relates to the billing entries for matters occurring before counsel for Plaintiff began reviewing the "claim file for preparation of Complaint." (See Doc. 83-5, Entries for September 30, 2013, through November 18, 2013). Plaintiff did not specifically address this aspect of United of Omaha's contention.[5]
Costs expended in pre-litigation administrative proceedings are not recoverable in the Eleventh Circuit Court of Appeals. Kahane v. Unum Life Ins. Co. of America , 563 F.3d 1210, 1215 (11th Cir. 2009). On the record before the Court, it appears that these costs concern the pre-litigation administrative process and, therefore, are not recoverable.
3.
United of Omaha also asserts that Plaintiff has failed to satisfy his burden of showing that many of the hours spent are reasonable. (Doc. 84 at 13-17). The law in the Eleventh Circuit is clear, " 'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed." Norman , 836 F.2d at 1301 (quoting Helsley v. Eckerhart , 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ).
If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.
Barnes , 168 F.3d at 428.
United of Omaha's argument centers on five distinct issues: (1) the Court dismissed Plaintiff's claims for breach of fiduciary duty and failure to provide plan documents; (2) the Court granted a judgment for defendant J & B Importers Welfare Plan; (3) the Court repeatedly rejected Plaintiff's arguments for application of the arbitrary and capricious standard of review; (4) Plaintiff's counsel filed a premature notice of appeal; and (5) Plaintiff's counsel billed for duplicative time spent by co-counsel in an effort to learn the case.
Concerning the Court's dismissal of Plaintiff's claims for breach of fiduciary duty and failure to provide plan documents, *1150 United of Omaha argues that the Court should disallow 17 hours spent by Plaintiff's counsel in May and June 2014 in responding to United of Omaha's motion to dismiss these claims (8.2 hours) and in reviewing documents and drafting the complaint during March and April 2014 (8.8 hours).[6] (Doc. 84 at 14-15). The Court finds that the hours spent on the response to the motion are due to be disallowed in full because the time was not justified. With regard to the preparation of the complaint the Court finds that the hours claimed should be reduced, but only by two hours. The Court does not believe it is necessary or appropriate to disallow the entire period. Instead, the Court has used its experience in determining the reasonable time for the adjustment.
United of Omaha next argues that any award should be reduced by 8.8 hours for the time spent during March and April 2014 drafting the complaint to include claims against J & B Importers Welfare Plan because J & B was dismissed from the case. (Doc. 84 at 15). United of Omaha again argues the total time for preparing the complaint should be deducted because Plaintiff failed to segregate the time spent regarding J & B Importers. (Id. ) The Court agrees with United of Omaha that this time is due to be disallowed, but believes for the reasons discussed above that only a portion of the time should be cut. The Court further believes that the reduction already made concerning the complaint is appropriate to account for this deficiency. Thus, no further reduction will be made.
United of Omaha next argues that because the Court repeatedly rejected Plaintiff's arguments for application of the arbitrary and capricious standard of review, the time expended on this issue should be deducted as unnecessary. (Doc. 84 at 15-16). It also asserts that all the briefing time should be excluded when challenges concerning the arbitrary and capricious standard were made because it is not possible to tell what part of the total time claimed is attributable to responding to United of Omaha's arguments in this regard. (Id. at 16). This challenge involves the following work by Plaintiff's counsel: June 2014-4.3 hours pursuing discovery; March to May 2015 summary judgment briefing-43 hours;[7] and July and August 2015 briefing concerning an objection to the Administrative Services Agreement-15 hours. (Id. at 15-16).
As to the initial challenge to the 4.3 hours of discovery work, Defendant generally argues that this was an unnecessary and unreasonable expenditure. (Id. at 16). Counsel's log for this period shows the following relevant entries:
*1151 June 18, 2014 Receipt and review of Defendant's proposed .8 Rule 26 report indicating the Defendant wants to have a Rule 26 meeting; call with defense attorney explaining in detail the effort it is going to take for me to respond to some of the serious problems that his proposed pleading creates with regard to discovery. Explained to him that the burden will be placed upon the Court and on the Plaintiff to correct his client's misrepresentation of what it means to have an ERISA claim pending in the U.S. District Courts. June 19, 2014 Research and review Rule 26 disclosure 2.1 requirements with regard to ERISA claims because of the Defendant's position that they do not have to comply with Rule 26 disclosure requirements. Research and review case law from all available circuits on the Defendant's refusal to participate in meaningful discovery and their arbitrary and capricious assignment of the right for them to determine what constitutes the ERISA record in a matter. Research and review precedent for the Defendant's claims that they do not have to provide pretrial hearing dates and other pretrial matters in their Rule 26 reports because it is an ERISA case. Begin drafting and editing lengthy narratives to respond along with case citations pointing out that the Defendant's views and opinions are without precedent and wholly unsupported by the Constitution, the statute in question, the Rules of Civil Procedure and the local rules. June 25, 2014 Draft discovery requests to United of Omaha to 1.4 includ[e] interrogatories and request for production of documents. Draft initial disclosures, review documents to be 2.2 produced and Bates number same 1-479.
(Doc. 83-5 at 9-10). It is difficult to tell from United of Omaha's challenge exactly what "4.3" hours is being referenced. It appears this challenge concerns the first three paragraphs quoted above. The Court believes it can discern from a review of the foregoing log entries, its docket sheet, and the relevant pleadings, that portions of the *1152 work done in June 2014 was reasonably associated with the prosecution of other aspects of this case. Accordingly, the Court finds it appropriate to reduced the requested time only by two hours.
Next, United of Omaha argues that the March to May 2015 summary judgment briefing should be excluded in total due to the continued advancement of the arguments on the inapplicability of the arbitrary and capricious standard of review to this case. (Doc. 84 at 16 ("The Court should reduce these fees because some of them are unnecessary.")). As a part of this contention, United of Omaha also argues that the 15 hours Plaintiff's counsel spent briefing an objection to the Administrative Services Agreement filed by United of Omaha should be disallowed. United of Omaha asserts its motion concerning the Agreement was necessitated because Plaintiff continued unjustifiably to assert that the arbitrary and capricious standard did not apply. (Id. ) In the "Conclusion" portion of United of Omaha's opposition to the fee request, United of Omaha also argues without citation that the reduction in this case should be 30% "based on Plaintiff's counsel's failure to exercise billing judgment." (Doc. 84 at 18).
In its Memorandum Opinion, the Court applied clear Eleventh Circuit law and found that the arbitrary and capricious standard of review applies in this case. (Doc. 47 at 22-28). The Court further found that it would not consider the Administrative Services Agreement in ruling on the motions for summary judgment. (Id. at 28-30). This does not mean, however, that all the time Plaintiff's counsel expended in responding to United of Omaha's objection to the Agreement should be excluded. United of Omaha's motion was necessitated by the Court's action in ordering "United of Omaha to produce a copy of the agreement and affording the parties the opportunity to address the agreement's impact, if any, on the motions for summary judgment." (Id. at 28-29 (referencing Docs. 40 & 43)). Under the circumstances, the Court finds that Plaintiff's counsel's expenditure of 15 hours for responding to the motion concerning the use of the Agreement was reasonable. The time will be allowed. However, the briefing hours on summary judgment will be reduced by 10 hours premised on Plaintiff's continued advancement of the arguments on the arbitrary and capricious standard of review in light of definitive Eleventh Circuit precedent on the issue.
United of Omaha next contends Plaintiff's counsel filed a premature notice of appeal and that time should not be deemed reasonable under the circumstances. (Doc. 84 at 17). The Court agrees. The notice of appeal was filed after this Court issued its opinion on the summary judgment motions. The appeal was dismissed, sua sponte , by the Eleventh Circuit Court of Appeals approximately two months after it was filed for lack of jurisdiction. (Doc. 67). The Eleventh Circuit determined that the appeal was due to be dismissed because this Court's action was not a final order or immediately appealable. (Id. ) Accordingly, the time expended in this endeavor is not compensable. The 5.2 hours spent from November 2015 to January 2016 on the appeal will be deducted from the final determination.
Lastly, United of Omaha challenges Plaintiff's submission to the extent it seeks to recover 2.8 hours spent on February 28, 2017, by Mr. Fernon to familiarize himself with the case. (Doc. 84 at 17). Considering Mr. Fernon's involvement in the case following his introduction to the same, the Court finds this time is reasonable and allowable.
4.
United of Omaha does not opposed Plaintiff's petition to the extent it seeks *1153 $4,286.26 in expenses. (See generally Doc. 84). The Court has reviewed the listed expenses and finds them to be reasonable and compensable.
III.
In accordance with the foregoing, the Court finds that Plaintiff's petition for attorney's fees and costs (doc. 83) is due to be and hereby is GRANTED IN PART and DENIED IN PART as follows:
1. Attorney's fees are ALLOWED to the following extent:
a. Mr. Sinclair at the rate of $325.00 for 15.3 allowable hours expended on or before December 31, 2014, totaling $4,972.50;[8] $335.00 for 78.6 allowable hours expended from January 1, 2015, to December 31, 2015, totaling $26,331.00;[9] and $350.00 for 51.4 allowable hours expended after December 31, 2015, totaling $17,990.00;[10] for a grand total of $49,293.50 for Mr. Sinclair; and
b. Mr. Fernon at the rate of $225.00 for 17.3 hours, for a grand total of $3,892.50;
2. Expenses are ALLOWED in the amount of $4,286.26; and
3. The Clerk of the Court is DIRECTED to close this case.
DONE and ORDERED , this the 18th day of October, 2017.

In Bonner v. City of Prichard , 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. Eleventh Cir. R. 36-2.

"Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Johnson , 488 F.2d at 717-19 ; Bivins , 548 F.3d at 1350, n.2.

Plaintiff cites the following authorities in support of this contention:
Boxell v. Plan for Group Ins. of Verizon Commun., Inc. , 1:13-CV-089 JD, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) (quoting Jeffboat, LLC v. Director, Office of Workers' Compensation Programs , 553 F.3d 487, 490 (7th Cir. 2009) ); Amos v. PPG Indus., Inc. , No. 05-cv-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) ("In ascertaining the proper 'community,' district courts may look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases.").
(Doc. 83 at 7-8). He also cites the following in support of the use of national market rates:
Boxell v. Plan for Group Ins. of Verizon Communications, Inc. , No. 13-CV-089, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) ("ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs seeking disability benefits, and Ms. Boxell has adequately established that there is a national market for the services of those attorneys"); Frommert v. Conkright , 223 F.Supp.3d 140, 152 (W.D.N.Y. 2016), reconsideration denied , 00-CV-6311L, 2017 WL 952674 (W.D.N.Y. Mar. 10, 2017) (" "While this action generally involved Rochester-area plaintiffs, there is also some support for plaintiffs' assertion that in certain highly specialized areas of law, such as ERISA, the relevant legal community is national in scope."); Id. ("[T]he hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district.").
(Id. )

While this issue was raised in Defendant's response to the Petition for fees, Plaintiff did not seek permission to file a reply to the response.

United of Omaha requests that the Court not allow any time in drafting the complaint "[b]ecause it is unclear what portion of this time was spent preparing to file these dismissed claims." (Doc. 84 at 14).

This includes 2.4 hours responding to a motion to exclude that the Court granted. (See Doc. 35 & Doc. 47 at 30-31).

The billable hours claimed by Mr. Sinclair for 2013-2014 totaled 30.4. (See Doc. 83-5 at 7-11). The Court subtracted 15.1 disallowed hours (2.9 for 2013 and 12.2 for 2014).

The billable hours claimed by Mr. Sinclair for 2015 totaled 93.8. (See Doc. 83-5 at 11-18). The Court subtracted 15.2 disallowed hours.

Mr. Sinclair's billable hours for 2016-2017 totaled 51.4 with no hours being disallowed. (See Doc. 83-5 at 18-23).